No. 23-1108

I<small>N</small> T<small>HE</small> U<small>NITED</small> S<small>TATES</small> C<small>OURT OF</small> A<small>PPEALS</small>

F<small>OR THE</small> T<small>ENTH</small> C<small>IRCUIT</small>

---

## UNITED STATES OF AMERICA,
### *Plaintiff / Appellee,*
### v.
## DEDRIC MAYFIELD,
### *Defendant / Appellant.*

---

On Appeal from the United States District Court
for the District of Colorado,
The Honorable William J. Martinez
1:21-cr-00341-WJM

---

## APPELLANT'S REPLY BRIEF

---

Benjamin Miller
P.O. Box 58144
Salt Lake City, UT 84158
(617) 701-7774
ben@appellatedefense.com

*Counsel for Mr. Mayfield*

## ORAL ARUGMENT IS REQUESTED

### TABLE OF CONTENTS

Table of Authorities..........................................................................ii

Argument........................................................................................ 1

I. The court's order to defense counsel to cooperate with the government or start trial on "very bad footing" violated Mr. Mayfield's rights. ........................................................ 2

   A.  The court's conduct went well beyond merely asking the defense to confer with the government. ...................................... 3

   B.  The court's ultimatum to defense counsel to stipulate or else had the appearance of a threat that impacted Mr. Mayfield's rights.......................................................... 7

   C.  Once the court ordered the defense to stipulate or be on bad footing with the court, there was no meaningful opportunity to raise an objection................................................ 14

   D.  It should be obvious to any judge not to demand that defense counsel stipulate to the government's evidence to the "maximum extent possible."................................................ 17

II.    Applying *Bruen*, 18 U.S.C. § 922(g)(1) is facially unconstitutional and Mr. Mayfield's conviction must be vacated.................................................................................. 25

Conclusion .................................................................................. 30

Statement Regarding Oral Argument.......................................... 31

Certificate of Compliance ........................................................... 32

Certificate of Digital Submission ............................................... 33

Certificate of Service .................................................................. 34

# TABLE OF AUTHORITIES

## CASES

*Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462 (10th Cir. 1994) ........ 14

*Greer v. United States*, 141 S. Ct. 2090 (2021) ............................. 14

*Henderson v. United States*, 568 U.S. 266 (2013) ........................ 23

*In re McConnel*, 370 U.S. 230 (1962) ............................................ 21

*Johnson v. State*, 722 A.2d 873 (Md. 1999) ................................... 9

*Liteky v. United States*, 510 U.S. 540 (1994) ................................. 9

*N.Y. State Rifle & Pistol Ass'n., Inc. v. Bruen*,
   142 S. Ct. 2111 (2022) .................................................... 25, 26, 28

*North Carolina v. Pearce*, 395 U.S. 711 (1969) ............................ 22

*Range v. Garland*, 69 F.4th 96 (3d Cir. 2023) (en banc) .............. 28

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ............. 23

*Thorne v. United States*, 46 A.3d 1085 (D.C. 2012) ...................... 12

*United States v. Algarate-Valencia*,
   550 F.3d 1238 (10th Cir. 2008) .................................................. 15

*United States v. Beaty*, 722 F.2d 1090 (3d Cir. 1983) ................... 16

*United States v. Crocker*, 788 F.2d 802 (1st Cir. 1986) ................. 6

*United States v. Cruz*, 977 F.2d 732 (2d Cir. 1992) ........................ 6

*United States v. Gieswein*, 887 F.3d 1054 (10th Cir. 2018) .......... 27

*United States v. Griffith*, 928 F.3d 855 (10th Cir. 2019) .............. 27

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011) ...................... 5

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) ...... 26, 29

*United States v. Middagh*, 594 F.3d 1291 (10th Cir. 2010) .......... 14

*United States v. Rodriguez*, 919 F.3d 629 (1st Cir. 2019) ............. 14

*United States v. Walker*, 9 F.3d 1245 (7th Cir. 1993) ........... 6, 7, 13

*Vincent v. Garland*, 80 F.4th 1197 (2023) ..................................... 28

**STATUTES**

18 U.S.C. § 922 ....................................................................... 25, 26

**OTHER AUTHORITIES**

ABA Model Code of Judicial Conduct (2020) ................................ 21

Bennet L. Gershman, *Judicial Interference with Effective
  Assistance of Counsel*, 31 Pace L. Rev. 560 (2011) ...................... 3

Danny Y. Li, *Antisubordinating the Second Amendment*,
  132 Yale L. J. 1821 (2023) ......................................................... 28

Geraldine Rowe, *At Legal Loggerheads: An Argument for a
  Special Rule Guiding Judicial Commentary on Attorneys*,
  9 Geo. J. Legal Ethics 933 (1996) .............................................. 19

Louis S. Raveson, *Advocacy and Contempt: Constitutional
  Limitations on the Judicial Contempt Power Part One:
  The Conflict Between Advocacy and Contempt*,
  65 Wash. L. Rev. 477 (1990) ........................................................ 4

Nelson Lund, *Bruen's Preliminary Preservation of the Second
  Amendment*, The Federalist Society (Nov. 8, 2022) ................... 28

Zeke Webster, *The Disappearing Rights of Criminal Defendants
  in America*, Balls and Strikes (Dec. 6, 2021) ............................ 24

ARGUMENT

Days before trial, the district court ordered Mr. Mayfield's attorney to "stipulate" to the government's evidence to the "maximum extent possible," or else start trial on "very bad footing with me." There was an unmistakable takeaway from the court's directive—to appease the court, defense counsel was to make it easier for the government to meet its burden. Mr. Mayfield has a right to go to trial, a right to require the government to meet its burden, and a right to be represented by an attorney with undivided loyalty to protecting his rights. The court's conduct violated each.

Nevertheless, in its brief, the government sees nothing wrong with the court's actions, brushing it all aside as routine case management. The government even disputes that it was improper for the court to warn the defense to cooperate or start on "very bad footing with me." The government's position is untenable in an adversarial system where the defense has no burden of proof and should *never* be required to make it easier for the government to prove its case.

## I. The court's order to defense counsel to cooperate with the government or start trial on "very bad footing" violated Mr. Mayfield's rights.

While not disputing the relevant facts, the government believes the court acted properly, citing three premises: 1) what the court did falls under routine case management; 2) the court did not threaten Mr. Mayfield but merely expressed frustration to his attorney; and 3) the court's conduct did not impact Mr. Mayfield's rights. None of these find support in the facts or the law. Even if courts have leeway to manage trials, it does not encompass nor justify what occurred. There is no way to interpret what the court said other than it appeared to threaten the defense with repercussions if counsel failed to stipulate to the court's satisfaction. And the court's order not just led to the defense stipulating to all of the government's evidence, but also to an overall chilling effect on counsel's obligation to zealously represent Mr. Mayfield with undivided loyalty.

### A. The court's conduct went well beyond merely asking the defense to confer with the government.

The government contends that the court "did nothing more than encourage Mayfield's counsel when it ordered him to confer with the government." (Govt. Br. at 11). But to any extent a court may "encourage" defense counsel to cooperate with the government, the court's actions far exceeded mere encouragement. A court's discretion in case management "does not authorize a judge to improperly impede defense counsel's representation in ways that destroy a defendant's right to a fair trial and the effective assistance of his attorney." Bennet L. Gershman, *Judicial Interference with Effective Assistance of Counsel*, 31 Pace L. Rev. 560, 561-62 (2011). When a court directs improper comments at counsel, "they may unnerve and demoralize counsel" and ultimately "impair his ability to function effectively[.]" *Id.* at 570.

If all the court had done was encourage the defense to talk with the government, perhaps that could be excused. But the court did not encourage, it "direct[ed]" counsel to not only

confer but to stipulate, and do so to the maximum extent possible. The court also made sure counsel knew there would be repercussions for failing to stipulate to the court's liking. The court warned counsel that the defense would be "starting on a very bad footing with me if you do not." ROA at 619-20.

The government cites a series of cases it claims support the district court's actions. (Govt. Br. at 10-11). Not a single one actually does. First, the government cites two inapposite civil cases—including one that is a dissent from denial of a petition for rehearing *en banc*. Any leeway a judge may have in the civil context is inapplicable in a criminal case where Mr. Mayfield, like all defendants, has constitutional rights to a fair trial and effective assistance and it is solely the government's burden to be able to prove its case. *See generally* Louis S. Raveson, *Advocacy and Contempt: Constitutional Limitations on the Judicial Contempt Power Part One: The Conflict Between Advocacy and Contempt*, 65 Wash. L. Rev. 477, 512 (1990) ("[T]he sixth amendment and due process rights of a criminal defendant arguably demand [courts

afford] greater latitude for defense counsel in criminal cases.").

The government does cite two criminal cases, but neither is helpful to its position. It cites *United States v. Hill*, 643 F.3d 807, 848 (11th Cir. 2011), but that case actually shows why the court erred here. *Hill* recognized that there is a distinction between a court offering a "carrot" (a benefit for having done something willingly) and a "stick" (punishing a defendant for not doing as a court desires). *Id*. at 848. The former is permissible; the latter is not. The former is what happened in *Hill*; the latter is what happened here.

The Eleventh Circuit held in *Hill* that a sentence was not unreasonable, in part, because the district court gave the defendant credit for having stipulated to portions of the government's case. *Id*. Giving a defendant credit *after* trial for something the defense willingly agreed to is far different than forcing the defense *before* trial to stipulate to the government's evidence to the maximum extent possible.

For comparison, a court can give a defendant credit at sentencing for having pled guilty; a court cannot force a defendant to plead guilty or tell the defendant there will be repercussions for not doing so. *See United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir. 1992) (reversing when court "created an unacceptable risk" the defendant was punished for not agreeing to plead guilty); *United States v. Crocker*, 788 F.2d 802, 807 (1st Cir. 1986) (relying on a "presumption" of vindictiveness when a court made it appear there will be consequences for taking a case to trial).

Lastly, the government points to *United States v. Walker*, 9 F.3d 1245, 1250 (7th Cir. 1993). While the Seventh Circuit found no error in the court encouraging the defense to "reconsider" not stipulating to the government's evidence, the holding from that case does not support the district court's conduct here.  In short, what the trial court said to counsel in *Walker* pales in comparison to the demands made by the court to Mr. Mayfield's attorney.

In *Walker*, the court asked counsel to "reconsider," not stipulate, while also acknowledging that the defendant "had a right to put the government to its proof." *Id*. The court did not say it was unacceptable not to stipulate and the court did not threaten counsel that he would start trial on "very bad footing" if he failed to follow the court's demand. Here, in contrast, the district court never acknowledged Mr. Mayfield's rights when it ordered his counsel to ease the government's burden to present evidence against him.

**B.     The court's ultimatum to defense counsel to stipulate or else had the appearance of a threat that impacted Mr. Mayfield's rights.**

Much of the government's defense of the district court's conduct hinges on its insistence the court did not threaten counsel. The government writes, "the remarks weren't threats to punish anyone, let alone Mayfield. They were expressions of frustration with counsel." (Govt. Br. at 11). Any claim it did not appear to be a threat cannot be squared with what the court said. After ordering counsel to stipulate, the court warned that failure to do so would cause the defense to start

trial "on very bad footing with me." ROA at 620. Ordering someone to do something or face repercussions is a quintessential example of a threat. The government's position to the contrary is inconsistent with what took place.[1]

The government's attempt to split hairs—claiming the court did not threaten Mr. Mayfield but was expressing frustration only with his counsel—should be disregarded. Obviously, Mr. Mayfield is represented by his attorney and any demand of counsel affects Mr. Mayfield. When the threat related to what would happen at trial, during which Mr. Mayfield's right to a fair trial and right to effective assistance were at play, he was impacted the same way as if the court had directed its comments specifically to him. As the Maryland Supreme Court has explained, "Although judicial anger" may be "understandable" at times, "a judge should not let his displeasure with" litigants or lawyers "unduly affect

---

[1] Whether the court meant it as a threat is irrelevant. The question is whether what the court said appeared to threaten counsel with repercussions for not doing as the court ordered at the expense of Mr. Mayfield's rights.

his conduct in the courtroom." *Johnson v. State*, 722 A.2d 873, 879-80 (Md. 1999). Here, whatever reason the court had to be frustrated with defense counsel, it is no cause to express the displeasure in a way that undermined Mr. Mayfield's rights.[2]

The government points to *Liteky v. United States*, 510 U.S. 540, 555 (1994). But even there, though the Court recognized trial courts may at times express frustration, it detailed there must always be limits. One limit is when the

---

[2] Also, though a court being displeased does not justify what happened here, it is not conceded the court had any reasonable basis to actually be displeased with defense counsel. Decisions by defense attorneys about whether to stipulate must be guided by one concern—what is in the client's best interest. What other attorneys in other cases did, what a court may desire, or even if the government stipulated to the defense evidence, is irrelevant.

Further, if the court had actual concerns that the case might take too long or bore the jury, there is no reason the court could not have expressed its opinion to both sides. For instance, the court could have asked the government to reexamine if all its exhibits were necessary. That the court's commands were focused only on the defense underscores the impropriety of the court's actions. Also, some cases are longer than others and some involve less than scintillating subject matter. How to present each case in a way a jury won't be put to sleep is the burden the government undertakes when it chooses to prosecute. Neither a court nor the government should expect the defense to accommodate the prosecution because a case may be lengthy.

frustration manifests itself in a "high degree" of antagonism. *Id*. If indeed the court was frustrated at the defense, the court allowed that frustration to manifest in improper commands for counsel to cooperate with the government or otherwise suffer consequences from the court.

The government believes the court's comment about "fiduciary" duty justified what the court said. (Govt. Br. at 16). The government writes that by fiduciary duty, the court meant that counsel should remember he has to make "tactical and strategic decisions for Mayfield's benefit consistent with zealous representation." *Id*. The government may be correct in its interpretation of fiduciary duty. What it leaves out is that requiring the defense to stipulate was not for Mr. Mayfield's benefit. Making a forced decision to stipulate, not because it offers a strategic benefit to Mr. Mayfield but to avoid a judicially-imposed penalty, is inconsistent with any notion of fiduciary duty or zealous representation.

Defense counsel, to be effective, should not be forced to make decisions for the government's or court's benefit or to

comply with the court's wishes. Yet that is precisely what happened here. It was improper. In comparison, the government cites that the defense had agreed to the admissibility of the HALO video. However, that is an instance where it was in counsel's fiduciary duty to stipulate to that exhibit. By stipulating, the defense was able to convince the court to deny the government's request for a continuance. A decision to avoid a delay before trial reasonably was made in Mr. Mayfield's interest. In contrast, when the defense later stipulated to all the other evidence, it did so not because that was in the interest of the defense, but because it was what the court demanded. The only possible benefit to the defense was in appeasing the court.

Failing to recognize the impact of what the court did, the government argues that the court's actions did not undermine Mr. Mayfield's rights because decisions such as whether to stipulate are for counsel to make. (Govt. Br. at 16). But the government misses the fact that even if those decisions belong

to defense counsel, the decision still must be based on what is in Mr. Mayfield's best interest, not what a court wants.

For example, Mr. Mayfield's brief discusses the case of *Thorne v. United States*, 46 A.3d 1085, 1088 (D.C. 2012), where the trial court held it against the defense when counsel required the chemist to testify. Just like whether to stipulate, deciding whether to require a witness to testify was a decision for counsel to make. But the court's actions violated the defendant's rights because it told counsel there would be repercussions to the defense for making a choice that the court disagreed with. As the D.C. Court of Appeals said, even the "appearance of vindictiveness must be absent from judicial proceedings." *Id.*

In Mr. Mayfield's case, the court's statements at a minimum gave the appearance of vindictiveness—that counsel, and by extension Mr. Mayfield, would start trial on "very bad footing with me" unless the defense made choices consistent with what the court wanted. Once the court did that, the issue did more than impact an attorney's strategic

decision. It impacted Mr. Mayfield's substantive rights to hold the government to its burden to prove its case.

The government makes a similar error in its contention that "stipulations or not, the government always had the burden to prove Mayfield's guilt beyond a reasonable doubt." (Govt. Br. at 16). But the burden resting with the government means little if the court requires the defense to make it easier for the government to do just that. Even the *Walker* case the government relies on recognized that a possible harm from asking the defense to consider stipulating is that it interferes with a defendant's "right to put the government to its proof." *Walker*, 9 F.3d at 1250. At least there the court only asked the defense to "reconsider." Here, the court ordered counsel to stipulate. It may be one thing to ask defense counsel to consider stipulating. But it is far different to tell counsel it is unacceptable not to stipulate to the "maximum extent possible," and to face repercussions if counsel chooses not to.

**C. Once the court ordered the defense to stipulate or be on bad footing with the court, there was no meaningful opportunity to raise an objection.**

The government believes the lack of objection requires the issue to be decided under plain error. The government is wrong. While normally objections are required, they are not when to do so would be futile due to lack of meaningful opportunity. *See United States v. Rodriguez*, 919 F.3d 629, 634-35 (1st Cir. 2019) (concluding plain error did not apply when the defense had "no realistic opportunity to object before the entry of judgment"); c*ompare United States v. Middagh*, 594 F.3d 1291, 1295 (10th Cir. 2010) (holding that counsel did not have to object when the court's actions indicated the "matter [was] done"), *with Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1465 (10th Cir. 1994) (despite the court giving counsel a "checklist" of requirements for trial, an objection would not have been futile when that same checklist acknowledged the court was open to exceptions).[3]

---

[3] The government reads too much into *Greer v. United States*, 141 S. Ct. 2090 (2021), to claim the futility exception

Here, the court's actions sent the message to counsel that the matter was done. Counsel's position had been established—he had not stipulated to the government's evidence. The court's response, through everything it said, indicated that was not acceptable. Not a word the court said showed it was willing to consider anything less than the defense stipulating to what the court believed to be the maximum extent possible. The court told counsel any other path was "not acceptable," the court "direct[ed]" counsel to confer with the government, and twice the court told counsel to stipulate to the "maximum extent possible." The court ended its demand by warning counsel, "do we understand each other?" ROA at 619-20. The court's mind had been made up and the matter was done—counsel was to stipulate to the

---

has been rejected in total. At most the Court ruled the exception did not apply where a defendant had the opportunity to object but did not out of a belief the objection would be denied. *Id.* at 2099. Thus, *Greer* did not abrogate the futility exception announced in *United States v. Algarate-Valencia*, 550 F.3d 1238, 1243 n.4 (10th Cir. 2008).

government's evidence, not because it was in Mr. Mayfield's best interest, but because it was what the court ordered.

The government believes an objection would have allowed the court to "dispel" any notion it was forcing the defense to stipulate. However, other than the court taking back everything it had said, there was nothing to clear up. Even if the court had tried to backtrack, it would have been too late. The damage was done the moment the court ordered the defense to make decisions based on how the court wanted trial to unfold instead of what was in Mr. Mayfield's best interest. *See United States v. Beaty*, 722 F.2d 1090, 1093 n.3 (3d Cir. 1983) (finding fault in a judge who warned defense counsel he could be made to testify if he continued with his cross-examination because it caused counsel to reasonably feel "intimidated" by actions that had a "chill[ing] effect).

**D.    It should be obvious to any judge not to demand that defense counsel stipulate to the government's evidence to the "maximum extent possible."**

Because this Court should treat the error as preserved, it can and should apply the structural error doctrine. In positing that the error was not structural, the government believes the error to be "quantifiable in the same way that the erroneous admission of evidence is generally quantifiable[.]" (Govt. Br. at 19). The government is incorrect.

If there is an error in admitting evidence, one can reasonably consider how trial would have unfolded absent the mistake. But here, the error was not in admitting evidence. It was in forcing the defense to ease the government's burden. The order from the court to the defense impacted how every aspect of trial unfolded, leaving no reasonable way to quantify what would have happened. As mentioned above, the harm from the court's actions was not only that it forced the defense to ease the government's ability to prove its case, but that it also sent a message that the court was more concerned with the trial taking too long—i.e., putting the jury to "sleep"—

than it was in seeing zealous advocacy from a defense counsel with an undivided loyalty to Mr. Mayfield.

The government asserts that "with or without the stipulations, the exhibits would have been admitted" and that the "trial was error free." (Govt. Br. at 7). Such is not accurate. As detailed in Mr. Mayfield's opening brief, (App. Br. at 48-50), there were numerous instances where the defense could have raised valid objections to evidence and testimony.

Trial was only otherwise error free because defense counsel did not object, despite repeated instances where an objection was called for. The testimony of three of the government's main witnesses was littered with objectionable testimony. (App. Br. at 48-50). The government tries to downplay the impact of some of that testimony. But the government does not, for instance, defend Officer Patrick's repeated speculation about what was happening in a video he did not see in real time, or his and Officer James' testimony about photographs that were cumulative to the videos that had been played, or Officer Nelson and Detective Kluth both

offering improper expert testimony when neither had been qualified. The relevance of the lack of objections is that it exemplifies how the court's conduct "interfere[d]" with Mr. Mayfield's counsel's willingness to "zealously" present the case to the jury. *See* Geraldine Rowe, *At Legal Loggerheads: An Argument for a Special Rule Guiding Judicial Commentary on Attorneys*, 9 Geo. J. Legal Ethics 933, 939-40 (1996) ("Judicial criticism can interfere with an attorney's ability" to zealously "argue her client's case[.]"). Even implicitly, the court's actions had a negative impact on how defense counsel performed throughout trial and sentencing.

Also, regardless of whether the government's evidence could have been admitted absent a stipulation, the harm from the court's actions is that it forced the defense to ease the government's burden solely for the benefit of the government. Once the court demanded that counsel stipulate or else, it reasonably undermined any notion that counsel zealously represented Mr. Mayfield at trial with undivided loyalty.

In arguing that the court's actions did not chill defense counsel's representation, the government cites that counsel cross-examined the government's witnesses, made an opening statement, and gave closing argument. Doing the minimum is not a sign that the court's actions had no impact on the trial itself. Considering the entire defense was to poke holes in the government's ability to prove its case, a court that appeared overly-concerned with anything slowing down trial and demanded counsel stipulate to the government's evidence undermined the very defense that counsel pursued at trial.

The court had a concern that the jury would be put "to sleep" if it had to sit through the government's presentation of dozens and dozens of exhibits. ROA at 620. The court's fear may have been correct. But the only reason that did not happen was because the defense was forced to stipulate. What if the jury did have to sit through a slog of a trial? If the jury had been put to sleep, it would have been because of the government's choices. There is no telling to what degree that could have impacted how a juror viewed the case. Thus, the

court's order to counsel served only to benefit the government and undermine the defense in its entirety. It cast a shadow on all that transpired after. That is why the error was structural.

Even if this Court determines the error was not structural or there needed to be an objection, reversal is still required under plain error. The government appears to believe the court might not have known better. (Govt. Br. at 17-18). We should expect more from the judiciary. Indeed, over sixty years ago, the Supreme Court in *In re McConnel*, 370 U.S. 230 (1962) stated that while the court "appreciate[d] the necessity for a judge" to control what happens in a courtroom, it is "essential to a fair administration of justice that lawyers" be able to effectively "present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice." *Id.* at 236. *See generally* ABA Model Code of Judicial Conduct, Rule 2.6 (2020) (while a judge "may encourage" parties to

engage in negotiations, a judge "shall not act in a manner that coerces any party into settlement").[4]

To claim any error was not plain, the government misconstrues the cases cited in Mr. Mayfield's opening brief. In writing that counsel was unable to find a similar case, the meaning was that there was no other case where a court's conduct so egregiously forced a defense attorney to cooperate with the government. *See* App. Br. at 31 ("An indication of how improper the court's comments were is that undersigned counsel has not found a single case where a judge threatened defense counsel with repercussions if counsel did not stipulate to the prosecution's planned evidence."). But the principle that a court should not make the defense fear repercussions for challenging the government's case is not new and should be uncontroversial. *See*, *e.g.*, *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969) (due process requires that a defendant be

---

[4]     Available     at     https://www.americanbar.org/groups/ professional_responsibility/publications/model_code_of_judici al_conduct/model_code_of_judicial_conduct_canon_2/rule2_6 ensuringtherighttobeheard/.

free from even the "apprehension" of vindictiveness for exercising one's rights).

Finally, even if this Court does not believe established case law informed the district court it was wrong to demand defense counsel cooperate with the government or else face repercussions, the error remains plain. As the Supreme Court explained, plain error review is not meant to be a "grading system for trial judges," *Henderson v. United States*, 568 U.S. 266, 278 (2013), but exists to correct those errors that "particularly undermine [] the fairness" of judicial proceedings. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018). The error here is such an error. The court overstepped its discretion by ordering the defense to cooperate or else, undermining the fairness of the proceedings.

For all the reasons the error is structural, it meets the final two prongs of the *Olano* test. The government believes not requiring an objection when a court has ordered defense counsel to act a certain way or else face repercussions will "imperil [] the integrity of judicial proceedings." (Govt. Br. at

26). The opposite is true. When a court demands that defense counsel make decisions based on what the court wants at the expense of a defendant's best interest, combined with a threatening ultimatum, the integrity that is at stake is that of the fairness of our courts. In a time of ever-diminishing trials, a ruling condoning courts requiring defendants to ease the government's ability to present its case would only reinforce the perception that "convenience" matters more than "respecting the rights of the people subject to [the judicial system's] power." Zeke Webster, *The Disappearing Rights of Criminal Defendants in America*, Balls and Strikes (Dec. 6, 2021).[5]

Thus, reversal is required.

---

[5] Available at https://ballsandstrikes.org/legal-culture/disappearing-criminal-defendants-rights/.

## II. Applying *Bruen*, 18 U.S.C. § 922(g)(1) is facially unconstitutional and Mr. Mayfield's conviction must be vacated.

Given the test established by the Supreme Court in *N.Y. State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the plain text of the Second Amendment precludes the restriction in 18 U.S.C. § 922(g)(1) because there was not a historical tradition banning all people with any felony conviction from having a firearm. As detailed in Mr. Mayfield's opening brief, at the time of the amendment, people with felony convictions were required to join militias where they were expected to use firearms. (App. Br. at 66-68). It was not until the twentieth century that any laws were passed prohibiting people with felonies from having firearms. *Id.* at 62-65. Thus, despite what may have been stated in earlier cases, the *Bruen* test dictates that prohibitions on people with felony convictions from possessing firearms be declared unconstitutional.

In its brief, the government claims there was not "good cause" for the defense not raising a constitutional challenge

even though *Bruen* came out after Mr. Mayfield's conviction. The settled law in the Tenth Circuit prior to *Bruen* was that § 922(g)(1) was constitutional. Despite the government arguing that the issue still should have been raised, defense attorneys have no requirement to raise frivolous issues. Arguing that the law was unconstitutional before the Court announced *Bruen* would have been frivolous. It was the *Bruen* decision that made the challenge to the constitutionality of § 922(g)(1) no longer futile or frivolous.

Undeterred by the timing of *Bruen*, the government argues defendants have "time" and "time again" raised second amendment challenges to § 922(g)(1). (Govt. Br. at 28). But looking at the examples the government presents only shows the error of its contention. The government cites *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009). But *McCane* was the decision from this Court that prior to *Bruen* made any facial challenge in this case to § 922(g) frivolous. There, this Court decided the issue and it remained the law until the *Bruen* test called it into question.

Next the government cites *United States v. Gieswein*, 887 F.3d 1054, 1064 n.6 (10th Cir. 2018). But there, the defense "acknowledge[d]" that Tenth Circuit precedent "foreclose[d]" the argument. *Id.* Tellingly, this Court relegated its analysis of the issue to two sentences in a footnote, indicative of the frivolous nature of the challenge at the time. Lastly, the government points to *United States v. Griffith*, 928 F.3d 855 (10th Cir. 2019). But counsel in *Griffith* filed an "*Anders*" brief because there were no non-frivolous issues to be raised. *Id.* at 864. This Court, while addressing the defendant's "pro se responses," at no point said counsel had been mistaken in filing an *Anders* brief. Even in addressing the issue, the Court did so under plain error because the defendant's trial attorney also had not raised a constitutional challenge. *Id.* at 870. In other words, no attorney in *Griffith*— neither the trial nor appellate attorney—believed there was a non-frivolous Second Amendment challenge at the time.

The government ignores the impact of *Bruen*, the very facts that make it unreasonable to have expected counsel to

have raised a challenge in anticipation of the decision. *Bruen* created a new two-step test that has been nearly universally recognized as having reshaped second amendment jurisprudence. *See, e.g.*, Nelson Lund, *Bruen's Preliminary Preservation of the Second Amendment*, The Federalist Society (Nov. 8, 2022) (*Bruen* "repudiate[ed]" settled second amendment jurisprudence and "wipe[d] away a large body of circuit precedent," providing "a new interpretive method.");[6] Danny Y. Li, *Antisubordinating the Second Amendment*, 132 Yale L. J. 1821, 1860 (2023) (*Bruen* "dramatically expands [the second amendment] guarantee" to possess firearms.); *Range v. Garland*, 69 F.4th 96, 101 (3d Cir. 2023) (en banc) ("*Bruen* abrogated our Second Amendment jurisprudence.").

On the merits, the government points to this Court's post-*Bruen* decision in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). There, a panel of this Court noted that it was only fifty years ago that a law banning people with felony

---

[6] Available at https://fedsoc.org/fedsoc-review/bruen-s-preliminary-preservation-of-the-second-amendment.

convictions from possessing firearms was passed. *Id.* at 1199. But the panel still concluded that *Bruen*, which stated restrictions must stem from a historical tradition, did not abrogate *McCane*. *Id*. The panel thus relied on *McCane* to deny a similar challenge to the one raised here. *Id*. *Vincent* was incorrectly decided as *McCane* cannot be squared with the *Bruen* test. Further, a petition for writ of certiorari is already pending before the Supreme Court on an identical issue from the Third Circuit. *See Garland v. Range*, 21-2835 (filed October 5, 2023).[7] As such, this Court should revisit its decision in *Vincent* and conclude an application of *Bruen* establishes that per se restrictions on people with felony convictions are not consistent with historical tradition and are thus unconstitutional. At minimum, this Court should hold the issue in abeyance until the Supreme Court weighs in on the constitutionality of § 922(g).

---

[7] Available at https://www.supremecourt.gov/DocketPDF/23/23374/284273/20231005143445830_Range%20Pet%2010.5.pdf.

## CONCLUSION

For the foregoing reasons and all those stated in Mr. Mayfield's opening brief, this Court should vacate Mr. Mayfield's conviction.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested due to the complexities

and fact-intensive nature of each of the issues presented.

Respectfully Submitted,

*Benjamin Miller*

Benjamin Miller
Bar No. 17720, Utah
PO Box 58144
Salt Lake City, UT 84158
Tel. (617) 701-7774
ben@appellatedefense.com

*Attorney for Mr. Mayfield*

## CERTIFICATE OF COMPLIANCE

I hereby certify that as required by Fed. R. App. P. 32, this brief is proportionally spaced and contains 5,154 words.

DATED this 20th day of November, 2023.

*Benjamin Miller*

Benjamin Miller

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing Appellant's Reply Brief, as submitted in Digital Form, is an exact copy of the written copy filed with the Clerk; all required privacy redactions have been made as required by 10th Cir. R. 25:5; and this digital submission has been scanned for viruses and, using Microsoft Office and Norton Security, according to the program, is free of viruses.

*Benjamin Miller*

Benjamin Miller
PO Box 58144
Salt Lake City, UT 84158
Tel. (617) 701-7774
ben@appellatedefense.com

*Attorney for Mr. Mayfield*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellant's Reply Brief, was sent to the following and a copy of the digital submission in electronic form was served via the ECF system, or mailed, postage prepaid, to the parties named below on November 20, 2023.

Rajiv Mohan
Assistant U.S. Attorney
United States Attorney's Office for Colorado
1801 California Street,
Suite 1600
Denver, CO 80202

*Benjamin Miller*

Benjamin Miller
Bar No. 17720, Utah
PO Box 58144
Salt Lake City, UT 84158
Tel. (617) 701-7774
ben@appellatedefense.com

*Attorney for Mr. Mayfield*